IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

John W. McQueen,                      :

    Plaintiff,                     :      Case No. 2:15-cv-2777

v.                                    :

Commissioner of IRS, et al.,          :      JUDGE ALGENON L. MARBLEY
                                                         Magistrate Judge Kemp

    Defendants.                    :

## REPORT AND RECOMMENDATION

On September 4, 2015, Plaintiff John W. McQueen filed a motion for leave to proceed *in forma pauperis* and a proposed civil complaint seeking relief against the United States and the Commissioner of the IRS. For the following reasons, the Court will grant the application to proceed *in forma pauperis* (Doc. 1) and will recommend that the complaint be dismissed under 28 U.S.C. §1915(e)(2), a statute which, as the Court explains below, requires the Court to evaluate the legal sufficiency of the complaint filed *in forma pauperis* before permitting the case to proceed.

### I. Background

In the complaint, Mr. McQueen says that he filed this case against the United States and the Commissioner of the IRS because "they have attempted to take [his] income tax return for an educational loan which is over 17 years old; and therefore, is TIMEBARRED." (Doc. 1, Ex. 1 at 3). More specifically, Mr. McQueen alleges that:

> On April 8, 2014, he filed his request for a refund. On or about June 1, 2014, he was sent a notice stating that his return was being withheld. It wasn't until August 1, 2014, that he was finally told his return was going toward an outstanding educational debt.

<u>Id</u>. Mr. McQueen asserts that, upon learning this information, he wrote a letter to the IRS, explaining that "the debt was TIMEBARRED" and thus "could not be collected." <u>Id</u>. Mr. McQueen then wrote a letter to the Commissioner of the IRS. That letter is attached to the complaint and states, in pertinent part:

> On April 8, 2014, I filed a paper income tax return. On August 1, 2014, I was informed by the irs, that my return was being taken because of a 17 year old, time barred educational loan. Under Ohio's Statute of Limitation, this debt cannot be collected; since there isn't any court that would hear a case so old.
>
> My Income tax return should never have been taken. And it should be returned to the above address.

<u>Id</u>. at 6. In sum, Mr. McQueen argues that defendants could not legally collect money toward his student loan debt by capturing his income tax refund, and they are liable to him on the ground that "they knew or reasonably should have known that their conduct ... was wrong and not supported by any law." <u>Id</u>., Ex. 1 at 3.

## II. <u>Legal Standard</u>

28 U.S.C. §1915(e)(2) provides that in proceedings *in forma pauperis*, "[t]he court shall dismiss the case if ...(B) the action ... is frivolous or malicious [or] fails to state a claim on which relief can be granted...." The Court of Appeals has held that section 1915(e)(2)'s initial screening requirement applies to complaints filed by non-prisoners as well as prisoners. <u>Baker v. Wayne County Family Independence Agency</u>, 75 F. App'x 501, 502 (6th Cir. 2003)(citation omitted). The purpose of this section is to prevent suits which are a waste of judicial resources and which a paying litigant would not initiate because of the costs involved. <u>See Neitzke v. Williams</u>, 490 U.S. 319 (1989). A complaint may be dismissed as frivolous only when the

plaintiff fails to present a claim with an arguable or rational basis in law or fact.  See id. at 327-28.  A complaint may not be dismissed for failure to state a claim upon which relief can be granted if the complaint contains "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Pro se complaints are to be construed liberally in favor of the pro se party.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  The complaint will be evaluated under these standards.

### III. Discussion

This case relates to the Treasury Offset Program ("TOP"), which is governed by a number of federal laws.  The TOP is "a centralized program administered by the Department of the Treasury to help federal agencies collect delinquent debts owed to the federal government."  Omegbu v. United States Dept. of Treasury, 2004 WL 3049825, at *1 (7th Cir. Dec. 16, 2004).  Generally, the TOP works as follows:  if an individual owes a delinquent debt to a government agency, that agency sends information about that debt to the database maintained by the Bureau of the Fiscal Service of the United States Department of the Treasury.  Before an individual receives a federal payment such as a tax refund, the database is searched to see if the individual owes a delinquent debt to a government agency.  When a delinquent debt appears in the database, the Bureau of the Fiscal Service offsets, or withholds, the federal payment to pay the individual's debt.  See 31 C.F.R. §285.2(c).  The Department of the Treasury is required to perform offsets by 31 U.S.C. §3716(c).  When a federal payment is used to offset a delinquent debt, the United States Department of the Treasury sends the individual a letter to notify that individual of the action

taken.  See 31 U.S.C. §3716(c)(7)(A).

With respect to student loans, if a borrower defaults on a student loan, the Department of Education ("DOE") may pursue collection of that debt through the TOP under 31 U.S.C. §3716 *et seq*.  As a creditor agency, the DOE must provide the debtor due process as required by certain federal statutes.  As one Court explained, such due process includes "notice of the proposed offset and an opportunity for a hearing to dispute the debt and certification to Treasury that these steps have been completed and that the debts qualify for collection by offset." Chavez-Romero v. United States Dept. of Educ., 2012 WL 5986535, at *1 (D.S.C. Aug. 9, 2012).  Offset of income tax refunds is specifically authorized by 31 U.S.C. §3720A(a).

The Court's initial inquiry is whether it possesses the authority to hear the type of claim raised in Mr. McQueen's complaint.  In other words, the Court will examine whether it has subject matter jurisdiction over this case.  Federal courts are courts of limited jurisdiction, and they may exercise only that jurisdiction which has been conferred upon them by Article III of the United States Constitution and by Act of Congress.  And even if a case appears to be the type of dispute usually heard by a federal court – such as a case which arises under federal law – it may be that the party being sued is immune from suit.  The United States has sovereign immunity and cases filed against it, its officers or its agencies often fall outside the jurisdiction of the federal courts.  Without subject matter jurisdiction over this dispute, the Court is without authority to hear the case and the case must be dismissed.

In his complaint, Mr. McQueen alleges that this Court has subject matter jurisdiction pursuant to "IRC 7433," also referred

4

to as the Taxpayers Bill of Rights, 26 U.S.C. §7433.  Section 7433 entitled "Civil damages for certain unauthorized collection actions" provides:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.  Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

26 U.S.C. §7433(a).  The United States and its agencies are generally immune from suit unless the United States consents to be sued, or waives, its sovereign immunity.  See F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).  However, 26 U.S.C. §7433(a) allows a plaintiff to sue the United States for collection-related practices by IRS officers or employees which are in violation of the Internal Revenue Code.  See id.

Offset under the TOP is a collection-related activity that is actionable under the Taxpayers Bill of Rights.  See Jones v. United States, 2012 WL 1424170, at *4 (D.C. Feb. 13, 2012).  However, the language of that statute only permits an action to be filed if a tax collection official has violated a tax-related statute or regulation.  Mr. McQueen appears to be claiming that the law was violated because it was too late for the IRS to capture his refund based on the age of his student loan.  That claim brings into question whether the IRS did anything wrong here, so the Court must also examine the procedure by which a taxpayer may obtain a determination that a refund otherwise due was improperly taken under the offset program.

Courts have held that a federal court only has jurisdiction

to hear a claim to review the validity of an offset where the claim is brought against the agency that requested the offset. Jones, supra, citing 26 U.S.C. §6402(g); see also Taylor v. United States, 2011 WL 1843286, *2 (D. Ariz. May 16, 2011)("26 U.S.C. §6402(g) deprives the Court of jurisdiction over Plaintiff's claims against the Treasury and the Internal Revenue Service challenging the interception of his income tax refunds"). Stated differently, this Court lacks subject matter jurisdiction to hear claims against either the United States or the IRS arising from the offset of a tax refund under 26 U.S.C. §6402(d). See Setlech v. United States, 816 F. Supp. 161, 166 (E.D.N.Y. 1993).  In cases like this, where the DOE was the agency responsible for requesting the offset, that agency must be named as the defendant in any action challenging the offset.  Jones, 2012 WL 142410, at *4 ("As DOE was the agency that requested the set-off, DOE must be named as the defendant for any claims challenging the set-off"); see also Ibrahim v. United States, 112 Fed. Cl. 33, n.3 (2013)("while plaintiff cannot challenge the tax refund offset by bringing a claim against the Treasury, plaintiff can challenge the offset by bringing a claim against the ED because the agency received the offset of plaintiff's tax refund").  Although that is a fairly technical problem which could be solved by permitting Mr. McQueen to amend his complaint to name the DOE as a defendant, as the Court explains below, his complaint would still be subject to dismissal.

One question which would have to be addressed, even if the DOE were a party to this case, is whether Mr. McQueen first presented his claim to the United States in the proper administrative fashion.  That is because 26 U.S.C. §7433 only allows for a waiver of sovereign immunity if a taxpayer first

exhausts the administrative remedies within the Internal Revenue Service before filing the lawsuit. See Taylor, 2011 WL 1843286, at *4; see also Tenpenny v. United States, 490 F. Supp.2d 852, 857 (N.D. Ohio 2007)("before a plaintiff can file a federal §7433 action in court, she must 'exhaust' certain administrative remedies"). As one Court observed:

> The exhaustion requirement is designed to protect administrative agency authority and promote judicial efficiency. The rationale of the doctrine is that an administrative agency should have the opportunity to apply its expertise, exercise the discretion delegated to it by Congress, and correct its own alleged errors in the first instance, with the possibility of avoiding resort to the courts altogether. The exhaustion requirement also improves the possibility that a fully-developed factual record will be produced, facilitating judicial review and aiding the court in its evaluation and analysis of often technical matters.

Mathis v. United States, 2003 WL 1950071, at *2 (D.S.D. Mar. 19, 2003) (internal quotations and citations omitted). The exhaustion requirements for a "civil cause of action for certain unauthorized collection actions" are set forth in 26 C.F.R. §§301.7433-1(d)-(e), and they require, inter alia, a plaintiff to file an administrative claim prior to bringing a lawsuit.

Mr. McQueen does not directly allege that he filed an administrative claim and otherwise exhausted his administrative remedies prior to filing suit under 26 U.S.C. §7433. He does, however, say that he tried to bring the matter to the IRS' attention by writing letters. At the pleading stage, the Court might allow him to proceed, subject to the defendants' ability to raise failure to exhaust administrative remedies as a defense. And the Court might take that same approach if it found that this is more properly viewed as a suit for a tax refund under 28 U.S.C. §1346(a), which also requires exhaustion of administrative

remedies.  But there is a more fundamental problem here.

Even if the Court were able to consider Mr. McQueen's claim on the merits, his claim would still be subject to dismissal. That is because the Higher Education Technical Amendments of 1991 eliminated time limitations on lawsuits to collect student loans. See 20 U.S.C. §1091a(a)(2)(D).  Although there was a time that the statute of limitations for collecting defaulted student loans was six years, the Higher Education Technical Amendments of 1991 abrogated that limitation.  See Hamilton v. United States, 2005 WL 2671373, at *4 (S.D. Ohio Oct. 19, 2005); see also United States v. Brown, 2001 WL 303362, at *1 (6th Cir. Mar. 19, 2001) (noting that the Higher Education Technical Amendments of 1991 eliminated the existing statute of limitations on the recovery of defaulted student loans); United States v. Motley, 2000 WL 1871732, at *2 (6th Cir. Dec. 12, 2000) ("the Higher Education Technical Amendments of 1991 retroactively abrogated all statutes of limitations on actions to collect defaulted federally-guaranteed student loans and revived stale actions").  Further, although Mr. McQueen argues that the Ohio statute of limitations (and there are many of them, with various time limits) bars the IRS' action here, the issue of payment of debts owed to the federal government is an issue of federal law, not state law. There is simply no federal statute of limitations which precludes an action to collect Mr. McQueen's student loan debt, even if that debt is seventeen years old.

This rule – that there is no time limit applicable to the government's effort to collect on a student loan – might seem absolute, but at least one court has held otherwise.  See United States v. Rhodes, 788 F. Supp. 339 (E.D. Mich. 1992) (holding that even though the statute of limitations did not bar the

8

government's effort to collect a 17-year-old student loan, the government waited too long to do so, based on the somewhat unusual circumstances present in that case). This represents the use of a legal doctrine called "laches" which allows a court to find a lawsuit untimely even if it was filed within the limitations period. However, this Court considered the <u>Rhodes</u> decision previously and found it to be an "anomaly," noting that "the vast majority of courts have held that the doctrine of laches does not bar the Government's efforts to collect on defaulted student loans." <u>Hamilton v. United States</u>, 2005 WL 2671373, at *4 (S.D. Ohio Oct. 19, 2005)(Holschuh, J.). Thus, even if Mr. McQueen had argued that laches barred the offset of his student loan, this Court would not accept that argument, nor would most other courts which considered the issue. As this Court stated, "to recognize a doctrine of laches defense in cases of student loan defaults would 'undermine Congress's intent in eliminating the statute of limitations.'" <u>Id</u>., quoting <u>United States v. Davis</u>, 817 F. Supp. 926, 929 (M.D. Ala. 1993); <u>see also United States v. Robbins</u>, 819 F. Supp. 672, 678 (E.D. Mich. 1993)(disagreeing with <u>Rhodes</u>); <u>United States v. Hargrove</u>, 2007 WL 2811832, at *5, n. 4 (W.D. Pa. Sept. 24, 2007)(noting that <u>Rhodes</u> is the only case "since 1991 where laches has been successfully applied against the Government to bar a claim to recover an outstanding student loan" and "the Court in <u>Rhodes</u> did not consider the effects of the then-recent amendments to Section 1091a to any laches defense in a student loan collection case"); <u>United States v. Hennigan</u>, 2015 WL 2084729, at *2 (M.D. Fla. Apr. 30, 2015)("the <u>Rhodes</u> decision has been roundly criticized, and appears to conflict directly with 20 U.S.C. §1091a"). Consequently, there is no legal barrier to the IRS' actions which affected Mr. McQueen's tax refund.

### IV. Recommended Disposition

Certainly, anyone who learns that a tax refund has been captured by the government and used as a payment on a 17-year-old debt might question how that happened. As this Report and Recommendation reflects, getting to court in such a case is a fairly complicated process, mainly because the United States cannot be sued without its consent, and in tax matters it has conditioned its consent on a number of procedural steps that have to take place before a suit is filed. Some of the tax laws, such as the ones relating to offsets, also require that a specific government agency other than the IRS be named as a defendant, even if the IRS was the agency which kept the tax refund. Given that Mr. McQueen is not an attorney, the Court is willing to interpret his complaint liberally, and if the only issues were his failure to name the right agency as a defendant and whether he did enough to bring the matter to the IRS' attention before he filed suit, the Court would be inclined to let him amend his complaint and to allow the case to go forward. But, as the Court understands the law, Mr. McQueen is mistaken about it being too late for the IRS, or the DOE, to collect on his loan. That is the reason that dismissal is being recommended.

For these reasons, it is recommended that this case be dismissed in its entirety. Should this recommendation be adopted, the Court should mail a copy of the complaint, this Report and Recommendation, and the Court's order of dismissal to the defendants.

### V. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge

of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have a district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P Kemp
United States Magistrate Judge

11